United States v. DeJesus

In the
United States Court of Appeals
for the Second Circuit

August Term, 2024
No. 23-6259

UNITED STATES OF AMERICA,
*Appellee*,

*v.*

JAIRO DEJESUS, AKA SEALED DEFENDANT 1, AKA WHEELS
*Defendant-Appellant*.[*]

On Appeal from a Judgment of the United States District Court
for the Southern District of New York.

ARGUED: JANUARY 16, 2025
DECIDED: JULY 17, 2026

Before: RAGGI, LIVINGSTON, and NARDINI, *Circuit Judges*.

After pleading guilty to two drug offenses, Defendant-Appellant Jairo DeJesus was sentenced to 144 months in prison and four years of supervised release in the United States District Court for

---

[*] The Clerk of Court is respectfully directed to amend the case caption as indicated above.

the Southern District of New York (Jesse M. Furman, *District Judge*). DeJesus appeals his sentence, arguing that the district court erred by denying him an adjustment for acceptance of responsibility, and that his prison term was substantively unreasonable. He also argues that the district court erred by imposing certain conditions of supervised release by orally referencing the pages in the presentence report where they were set forth, rather than reading aloud the conditions in their entirety; and by imposing a mental health treatment condition without sufficient support in the record. We reject each of DeJesus's arguments and therefore AFFIRM the judgment of the district court.

---

KEVIN MEAD (Olga I. Zverovich, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney, Southern District of New York, New York, NY, *for Appellee*.

JOHN S. WALLENSTEIN, Law Office of John S. Wallenstein, Garden City, NY, *for Defendant-Appellant*.

---

WILLIAM J. NARDINI, *Circuit Judge*:

After pleading guilty to two drug offenses, Defendant-Appellant Jairo DeJesus was sentenced to 144 months in prison and four years of supervised release in the United States District Court for the Southern District of New York (Jesse M. Furman, *District Judge*). The court imposed certain standard and special conditions of supervised release by orally referencing several pages of DeJesus's

presentence investigation report (PSR) at the sentencing hearing. One of those conditions required that DeJesus participate in mental health treatment.

DeJesus now appeals. He argues (1) that the district court procedurally erred by denying an adjustment to his offense level for acceptance of responsibility under the United States Sentencing Guidelines, (2) that his 144-month sentence was substantively unreasonable, (3) that the district court erred by imposing certain conditions of supervised release by referencing the pages in the PSR where those conditions were set forth, rather than reading aloud the conditions in their entirety, and (4) that the district court erred by imposing the mental health treatment condition without sufficient support in the record.

We disagree and therefore AFFIRM the judgment of the district court.

## I.    Background

Between April 2021 and August 2021, DeJesus sold about 73 grams of substances containing heroin and fentanyl over the course of five controlled buys. DeJesus was arrested pursuant to a criminal complaint on August 16, 2021, and he was granted pretrial release the next day. On the morning of his release, law enforcement officers searched DeJesus's apartment and discovered about 3 kilograms of fentanyl, as well as drug paraphernalia including a kilo press, which is "a device used to package large quantities of drugs." *United States v. Babilonia*, 854 F.3d 163, 171 (2d Cir. 2017). DeJesus promptly decided to make a run for the Dominican Republic, of which he is a

citizen. So on August 20, DeJesus arranged for a private jet flight from New York to Miami, and then tried to set up another flight from there to Haiti. But he was caught before he could complete his escape. When DeJesus was arrested, more than $15,000 was found hidden in his shoes. On September 13, 2021, a grand jury returned a two-count indictment against DeJesus, charging him with (1) conspiracy to distribute and possess with intent to distribute a controlled substance that weighed 40 grams and more containing fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B), and (2) distribution and possession with intent to distribute of a controlled substance that weighed 40 grams and more containing fentanyl, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B).

On April 14, 2022, DeJesus participated in a "safety valve proffer" with the government. A successful safety-valve proffer, in which the defendant "truthfully provide[s] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan," may entitle a defendant to a sentence below a statutory minimum, if he also satisfies various other requirements. 18 U.S.C. § 3553(f). To put it mildly, the session did not go well. As the government reported to the district court, DeJesus repeatedly lied. Among other things, DeJesus claimed that he never sold narcotics in his apartment; that the drugs found in the search of his apartment were not his; that he did not know why photographs of kilogram-sized bricks of narcotics were on his phone; and that he had not taken a flight to Miami (he said that he drove).

4

## II.    District Court Proceedings

On June 2, 2022, DeJesus pleaded guilty *sans* plea agreement to both counts in the indictment. On October 12, 2022, the Probation Department issued DeJesus's final PSR, which calculated DeJesus's recommended sentence under the November 2021 Guidelines Manual. The PSR began by setting the base offense level at 32 based on the amount of fentanyl involved in the offenses. The offense level was increased by two pursuant to Guideline § 2D1.1(b)(12) because DeJesus maintained premises (his apartment) for the purpose of distributing drugs. It was increased by another two levels pursuant to Guideline § 3C1.1 (Obstructing or Impeding the Administration of Justice) because DeJesus tried to flee the country while on pretrial release. The total offense level of 36, combined with DeJesus's criminal history category of I, resulted in a sentencing range of 188 to 235 months. The PSR recommended, however, a total term of imprisonment of 84 months in light of his familial ties and responsibilities. The PSR proposed that DeJesus's term of imprisonment be followed by four years of supervised release, and suggested twelve standard and five special conditions of supervised release, in addition to four conditions that were mandatory with any term of supervised release. The recommended conditions were listed in full on pages 22 through 24 of the PSR.

DeJesus filed his objections to the PSR one month later. He argued that he should not receive a two-point obstruction of justice enhancement because his attempt to abscond to the Dominican Republic was not directly related to the criminal conduct for which he was arrested; that, relatedly, he should receive a downward

adjustment for acceptance of responsibility; that he should be given a safety-valve reduction based on his participation in the proffer session; that he did not maintain his apartment for the purpose of distributing drugs and that some of the drugs found in the search of his apartment did not belong to him, so Guideline § 2D1.1(b)(12) should not be applied. DeJesus emphasized his family ties and the difficult conditions at the Metropolitan Detention Center in Brooklyn, where he was detained, and asked that the court sentence him to time served.

In light of DeJesus's objections, the district court scheduled an evidentiary hearing. The government filed its pre-hearing submission on January 26, 2023. On February 16, DeJesus submitted a letter that waived his right to an evidentiary hearing and requested to proceed to sentencing.

DeJesus appeared for sentencing on March 2, 2023, with an interpreter present. At the hearing, defense counsel confirmed that he had read the PSR and discussed it with DeJesus. DeJesus, who does not read English, confirmed that the PSR was read to him through an interpreter and that he discussed it with counsel. DeJesus also confirmed, in light of his waiver of his right to an evidentiary hearing, that he withdrew his objections to the facts set forth in the PSR.

DeJesus's sole argument at sentencing was that he was entitled to credit for acceptance of responsibility, in the form of a two-level downward adjustment to his offense level under Section 3E1.1(a) of the Guidelines, notwithstanding his attempt to flee. DeJesus argued that he fled simply because he was afraid of the health conditions in

6

jails and prisons during the COVID-19 pandemic. DeJesus did not dispute that his flight constituted obstruction of justice, which triggered an upward enhancement to his offense level under Guideline § 3C1.1. But he insisted that his conduct after his re-arrest showed that he accepted responsibility for his criminal conduct.

The district court rejected this argument, pointing to Application Note 4 to Section 3E1.1 ("Note 4"), which provides that "[c]onduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct" absent extraordinary circumstances. According to the district court, DeJesus's COVID-19-related fears, come August 2021, did not constitute "extraordinary circumstances" that would justify applying an acceptance of responsibility adjustment while simultaneously applying an obstruction enhancement. The court therefore adopted the PSR's recommendation that DeJesus's offense level was 36. Together with his criminal history category of I, this yielded a recommended range of imprisonment of 188 to 235 months.

The district court imposed a term of imprisonment of 144 months. This was below both the Guidelines range and the government's recommendation of at least 150 months. The district court explained that it was imposing a below-Guidelines sentence because the Guidelines calculation was "incredibly high" for a first-time offender and because jail conditions in August 2021 were "not as good as they should" have been. App'x at 75. The district court explained that it nevertheless chose to impose a "substantial sentence" because DeJesus (1) attempted to flee in an "egregious act

of obstruction," (2) lied during his safety-valve proffer, and (3) continued to "minimize his culpability." *Id*. at 75–76. The district court further explained that the underlying conduct was "extremely serious": It involved large quantities of fentanyl, which is "an extremely deadly, poisonous substance." *Id*. at 76–77.

The district court also imposed a four-year term of supervised release, though the district court flagged an expectation that DeJesus would "be removed from this country and supervised release may therefore be academic." *Id.* at 77. The district court stated that, in addition to the mandatory conditions set forth on page 22 of the PSR, it would impose "the standard conditions" of supervised release "set forth on pages 22 and 23 of the presentence report." App'x at 77–78. It also stated that it was imposing "the special conditions that are set forth on pages 23 and 24 of the presentence report." *Id*. at 78. As relevant to this appeal, one of the special conditions mandated that DeJesus participate in an outpatient mental health treatment program.

On March 2, 2023, the district court entered a written judgment, which included the mandatory conditions of supervised release and standard and special conditions recommended in the PSR.

DeJesus now appeals his sentence.

## III. Discussion

On appeal, DeJesus raises various challenges to his sentence. The standard of review is well established: We review sentences for reasonableness, which is "'a particularly deferential form of abuse-of-discretion review.'" *United States v. Davis*, 82 F.4th 190, 195 (2d Cir.

8

2023) (citation omitted). This standard of review applies "'both to the procedures used to arrive at the sentence (procedural reasonableness) and to the length of the sentence (substantive reasonableness).'" *Id.* at 195–96 (citation omitted). "Procedural error occurs in situations where, for instance, the district court miscalculates the Guidelines [or] treats them as mandatory . . . ." *United States v. Cossey*, 632 F.3d 82, 86 (2d Cir. 2011). We review *de novo* questions of law, "including our interpretation of the Guidelines," and review questions of fact for clear error. *United States v. Yilmaz*, 910 F.3d 686, 688 (2d Cir. 2018) (citation omitted).

### A. Acceptance of Responsibility Adjustment

DeJesus contends that the district court procedurally erred by denying an adjustment to his Guidelines offense level for acceptance of responsibility. He argues that he was entitled to a two-level decrease because he "clearly demonstrate[d] acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). (All references are to the 2021 Sentencing Manual, which applied to this case.) In denying this adjustment, the district court pointed to Note 4 of § 3E1.1, which provides that "[c]onduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct" but allowed for the possibility of "extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." DeJesus does not dispute that he obstructed justice by attempting to flee the country in a private jet while on pretrial release. He nonetheless argues (1) that the district court erred by

9

treating Note 4 as mandatory, and (2) that the district court failed to adequately account for the facts that his obstruction "occurred early on," that he later "freely admitted his conduct," and that his attempt to flee was motivated by his "fear of being imprisoned during the pandemic." Appellant's Br. at 13–17.

The district court did not err in its Guidelines calculation. As an initial matter, "[a]lthough the Guidelines are no longer mandatory, district courts remain statutorily obliged to calculate Guidelines ranges in the same manner as before *Booker*, considering the applicable Guidelines and their commentary, as well as relevant policy statements." *United States v. Parnell*, 524 F.3d 166, 170 (2d Cir. 2008) (citation and internal quotation marks omitted); *see also United States v. Rainford*, 110 F.4th 455, 475 n.5 (2d Cir. 2024) (clarifying that we still defer to Guidelines commentary post-*Kisor v. Wilkie*, 588 U.S. 558, 574–75 (2019)); *United States v. Zheng*, 113 F.4th 280, 299–300 (2d Cir. 2024) (same). Thus, the district court did not err by considering Note 4 when it calculated DeJesus's Guidelines offense level. *See United States v. McGrain*, 105 F.4th 37, 44 (2d Cir. 2024) ("The reduction for acceptance of responsibility is unavailable, absent extraordinary circumstances, to a defendant properly found to merit an obstruction-of-justice enhancement.") (citation and internal quotation marks omitted).

Even setting aside Note 4, we discern no error in the district court's conclusion that DeJesus's case did not warrant an acceptance of responsibility adjustment. If anything, it was DeJesus's flagrant misconduct—not his tepid and late-arriving efforts at good conduct— that speaks most clearly about whether he truly accepted

responsibility for his offense.  As the district court observed, DeJesus's (quite literal) flight to evade prosecution was egregious, regardless of the COVID-19 situation in August 2021.  DeJesus's later lies during his safety valve proffer, as well as his attempts at sentencing to downplay his culpability, certainly ran counter to any notion that he was freely accepting responsibility for his criminal conduct.

We therefore reject DeJesus's claim that the district court erred by declining to reduce his offense level for acceptance of responsibility.

## B.    Substantive Reasonableness

DeJesus next argues that his prison sentence is longer than necessary and therefore runs afoul of 18 U.S.C. § 3553(a)'s mandate that sentences be "sufficient, but not greater than necessary" to achieve the aims of sentencing.   We review the substantive reasonableness of a sentence deferentially, recognizing the broad discretion entrusted to sentencing judges.  *Davis*, 82 F.4th at 200. Sentences are to be set aside for substantive unreasonableness "only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions."  *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (*en banc*) (citation and internal quotation marks omitted).  And that range is wide indeed.  "[W]e will reverse only rare 'cases that, although procedurally correct, would nonetheless damage the administration of justice because the sentence imposed was shockingly high, shockingly low, or otherwise unsupportable as a matter of law.'"  *United States v. Fabian*, 171 F.4th 174, 194 (2d Cir. 2026) (quoting *United States v. Rigas*, 583 F.3d 108, 123

(2d Cir. 2009)).  We lack authority to simply "substitute our own judgment for the district court's on the question of what is sufficient to meet the § 3553(a) considerations in any particular case." *Cavera*, 550 F.3d at 189.

The 144-month sentence imposed on DeJesus, which was below the advisory Guidelines range, is not "shockingly high" in light of the record before the district court.  It is therefore not substantively unreasonable.  The court permissibly concluded that while "several grounds . . . justify a below guidelines sentence," including the "incredibly high" Guidelines range for a first-time offender and the poor conditions at the Metropolitan Detention Center during DeJesus's time there, "a substantial sentence" was nonetheless warranted because of (1) the "extremely serious" nature of his trafficking of fentanyl, which is "an extremely deadly, poisonous substance," (2) DeJesus's "egregious act of obstruction," (3) his subsequent dishonesty in his safety valve proffer, and (4) his efforts to "minimize his culpability" as late as the sentencing hearing.  App'x at 75–76.  These factors amply support the reasonableness of the sentence that was imposed.

DeJesus's arguments to the contrary are unavailing.  First, he argues that the unreasonableness of a 144-month prison term is demonstrated by the fact that it is five years longer than the Probation Office's recommendation.  This entirely misses the mark.  The sentencing recommendations of the Probation Office, though often quite helpful, are no more than that: suggestions that are not entitled to any judicial deference.  Congress has entrusted district judges with the weighty task of imposing sentences, and a sentence cannot be

12

impugned on appeal by pointing to its divergence from the recommendation of the Probation Department. *See United States v. Eberhard*, 525 F.3d 175, 179 (2d Cir. 2008).

DeJesus also argues that his sentence was unreasonable because it was greater than both the median and mean sentences for drug trafficking crimes nationwide and in the Southern District of New York, as well as the average national sentence for fentanyl distribution. But this does not change the calculus. Anyone with a passing knowledge of statistics will recognize that many defendants will (by definition) be sentenced above the national and local averages, and many will likewise be sentenced below these marks. That is the defining characteristic of an average. Just as we will not disturb a sentence simply because it falls above or below an advisory guideline range recommended by the Sentencing Commission, we will not disturb a sentence simply for straying above or below a national or regional midpoint.

Sentencing is a holistic and case-specific endeavor, and district judges are entrusted with broad discretion to tailor a sentence that fits the unique circumstances of both crime and criminal. That is precisely what the district court did here. It considered that, among other things, DeJesus attempted to flee the country while on pretrial release, lied to prosecutors during a proffer session, and sold 73 grams of narcotics that contained fentanyl. These factors counted against him. It also considered that DeJesus was a first-time offender, and that he endured difficult conditions of pretrial detention. These factors worked in his favor. In light of these aggravating and mitigating facts and the rest of the record, DeJesus has not

compellingly demonstrated that any disparity between his sentence and those of other similarly situated defendants was unwarranted. *See United States v. Broxmeyer*, 699 F.3d 265, 296–97 (2d Cir. 2012).

Finally, to the extent DeJesus challenges the weight the district court accorded to each of the § 3553(a) factors, he falls well short of establishing that this is an "exceptional case[] where the trial court's decision cannot be located within the range of permissible decisions." *Cavera*, 550 F.3d at 189 (citation and internal quotation marks omitted). Considering the underlying conduct and the reasons set forth by the district court, and affording its decision due deference, we conclude that the district court did not abuse its discretion in imposing a 144-month term of imprisonment.

## C. Oral Pronouncement of Conditions of Supervised Release

DeJesus next argues that the district court impermissibly modified its spoken sentence by incorporating into his written judgment several discretionary conditions of supervised release that, aside from two special conditions, had been incorporated only by oral reference to the pages of the PSR in which they were set forth rather than "specifically discussed" at the proceeding. Appellant's Br. at 21. However, we have recently held that "a sentencing court need not read the full text of every condition on the record." *United States v. Maiorana*, 153 F.4th 306, 314 (2d Cir. 2025) (*en banc*). Rather, the court may "as part of the pronouncement of the sentence in the presence of the defendant during the sentencing proceeding, expressly adopt or specifically incorporate by reference particular conditions that have

14

been set forth in writing and made available to the defendant in the PSR, the Guidelines, or a notice adopted by the court." *Id.*

The district court's pronouncement here rigorously adhered to these requirements. The court confirmed that the PSR had been made available to DeJesus (and because he did not speak English, it had been read to him with an interpreter). And the court "specifically incorporate[d] by reference," *id.*, the standard and special conditions contained in the PSR. *See* App'x at 77–78. The conditions in the written judgment were identical to the conditions in the PSR. No more was required. Accordingly, we reject this challenge to the conditions of supervised release.

### D. Mental Health Treatment Condition of Supervised Release

Finally, DeJesus argues that the district court erred when it imposed a special condition of supervised release mandating that he participate in an outpatient mental health treatment program.[1] The PSR recommended that this condition be imposed, but DeJesus failed to object to it in the sentencing memorandum that he subsequently

---

[1] Specifically, the district court imposed the following condition: "You must participate in an outpatient mental health treatment program approved by the United States Probation Office. You must continue to take any prescribed medications unless otherwise instructed by the health care provider. You must contribute to the cost of services rendered based on your ability to pay and the availability of third-party payments. The Court authorizes the release of available psychological and psychiatric evaluations and reports, including the presentence investigation report, to the health care provider." App'x at 85.

15

filed. DeJesus likewise failed to object at sentencing when the district court made clear that it was imposing "the special conditions that are set forth on pages 23 and 24 of the [PSR]," which included this condition. *Id.* at 78. As discussed, his only objection to the PSR concerned the applicability of an acceptance of responsibility adjustment. Because DeJesus had "notice that a condition of supervised release [would] be imposed and fail[ed] to object in the district court, our review is for plain error." *United States v. Robinson*, 134 F.4th 104, 109 (2d Cir. 2025); *see also, e.g.*, *United States v. McAdam*, 165 F.4th 688, 699 (2d Cir. 2026). "To establish plain error, a defendant must demonstrate: (1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Rivera*, 115 F.4th 141, 147 (2d Cir. 2024) (quoting *United States v. Taylor*, 961 F.3d 68, 81 (2d Cir. 2020)). "If all three requirements are satisfied, then we must also consider whether the error 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Id*. (quoting *United States v. Bleau*, 930 F.3d 35, 39 (2d Cir. 2019)).

As noted earlier, the Supreme Court has established that an appellate court must review a criminal sentence deferentially, intervening only if the sentence is unreasonable. *See Gall v. United States*, 552 U.S. 38, 41, 46 (2007) (explaining that "appellate review of sentencing decisions is limited to determining whether they are 'reasonable'"—that is, by applying "a deferential abuse-of-discretion standard"). This deferential reasonableness standard applies to all portions of a criminal sentence, "including conditions of supervised release," and thus we lack authority to simply second-guess the wisdom of a district court's sentencing decision. *United States v.*

*Lawrence*, 139 F.4th 115, 121 (2d Cir. 2025). As applied to supervised release, the reasonableness standard recognizes the "broad latitude" afforded to district courts to fashion special conditions of supervision. *United States v. Sims*, 92 F.4th 115, 120 (2d Cir. 2024).

As a substantive matter, district courts must take care to impose only those conditions that "serve the non-retributive purposes of sentencing and 'involve no greater deprivation of liberty than is reasonably necessary' to effect those purposes." *United States v. Harris*, 164 F.4th 181, 194 (2d Cir. 2026) (alteration adopted) (quoting 18 U.S.C. § 3583(d)(2)). "[W]e require 'narrow tailoring' only when a 'special condition implicates a fundamental liberty interest.'" *Lawrence*, 139 F.4th at 125 (quoting *United States v. Myers*, 426 F.3d 117, 126 (2d Cir. 2005). Where a special constitutional interest is not at stake, there need be only a "reasonable relationship between the factors considered by the district court in the individualized assessment and the special condition of release being challenged." *Sims*, 92 F.4th at 124 (quoting *United States v. Haverkamp*, 958 F.3d 145, 151 (2d Cir. 2020)). "A special condition need not reasonably relate specifically to any particular § 3553(a) factor, including the offense conduct, so long as there is a sufficient relationship between the special condition and at least one of the other factors." *Sims*, 92 F.4th at 124 (citing *United States v. McLaurin*, 731 F.3d 258, 262 (2d Cir. 2013)); *see also Lawrence*, 139 F.4th at 125 (affirming that a "search condition did not need to have a direct relationship to [defendant's] offense").

For a special condition to be procedurally reasonable, a district court must "make an individualized assessment" and "state on the

17

record the reason for imposing it." *United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018). "But even in the absence of an explanation, we may still uphold a condition if 'the district court's reasoning is self-evident in the record.'" *Robinson*, 134 F.4th at 111 (quoting *Betts*, 886 F.3d at 202).

DeJesus argues that the district court erred both procedurally and substantively when it imposed the mental health treatment condition. It erred procedurally, he contends, because it did not state its reasons for imposing the condition on the record and because its reasons for doing so are not self-evident in the record. And it erred substantively, he argues, because "[t]he record does not support" the treatment condition that was imposed. Appellant's Br. at 23.

The district court did not articulate why it was imposing the mental health treatment condition; though its failure to do so was understandable, given DeJesus's lack of objection. *See Robinson*, 134 F.4th at 111. Even so, *contra* DeJesus, we hold that the district court's reasons for requiring mental health treatment are self-evident in the record.

DeJesus expressly stated during his interview with the Probation Office that "[h]e would like to receive mental health counseling in the future," reporting that he "ha[d] been having stressors relating to his legal issues and him being away from his family." PSR ¶ 72. The context in which DeJesus made these statements cannot be overlooked: (1) he expressed his interest in counseling to the Probation Office, (2) defense counsel was present when he did so, (3) the condition was included in the PSR, (4) the district court confirmed that DeJesus had reviewed the PSR

18

recommendation, and (5) defense counsel failed to object either to the PSR or at sentencing. Put simply, DeJesus raised, and received, the promise of mental health treatment in the future. And the Guidelines recommend inclusion of "a condition requiring that the defendant participate in a mental health program approved by the United States Probation Office" "[i]f the court has reason to believe that the defendant is in need of psychological or psychiatric treatment." U.S.S.G. § 5D1.3(d)(5). Although on appeal DeJesus now contends that "[e]xpressing interest in counseling because of the stress induced by his legal situation is not even close to supporting a requirement of treatment," Appellant's Br. at 23, it is readily apparent why the district court imposed a mental health treatment condition.

And as a substantive matter, it was eminently reasonable for the district court to conclude that such a condition was warranted. Between DeJesus's desire for treatment, his "extremely serious" criminal conduct, App'x at 76, and his repeated displays of poor judgment in attempting to obstruct justice, our deferential standard of review mandates the conclusion that there was a "reasonable relationship" between the condition and the goal of furthering DeJesus's rehabilitation upon release from prison. *Sims*, 92 F.4th at 124 (internal quotation marks omitted); *see Robinson*, 134 F.4th at 111–12. We therefore conclude that the district court did not plainly err in imposing the challenged condition.

## IV. Conclusion

In sum, we hold as follows:

1. The district court did not err in declining to apply an acceptance of responsibility adjustment.
2. The 144-month prison sentence imposed by the district court was substantively reasonable.
3. The district court did not err by orally incorporating specific conditions from DeJesus's PSR by reference during the sentencing hearing.
4. The district court did not plainly err when it required that DeJesus undergo mental health treatment as a condition of supervised release.

We have considered DeJesus's remaining arguments and find them to be without merit. Accordingly, we AFFIRM the judgment of the district court.